LYONS, Judge,
after stating the ease, delivered the resolution of the Court to the following effect:
In the present case, the defendant might, with safety, perhaps, have demurred to the plaintiff’s bill. For, although it charges, that the bills of exchange were taken upon the credit of Blane, yet, that is inconsistent with the other facts stated in it; such as the requisition that the bills should be endorsed by Bailen and Dulrymple, and, when that could not be obtained, the taking of an assignment of the hills of lading. These circumstances prove, that the bills were neither drawn, nor taken upon the credit of Blane, but that the plaintiff looked elsewhere for security. Therefore, upon his own shewing, it is probable, that the bill could not have withstood a demurrer.
Be that as it may, however, the case is clearly, in favour of the defendant, upon the testimony; for the plaintiff does not prove, that he ever saw, or heard of Hunter’s powers before he sold the corn to him. But, if he had, those powers did not authorise Hunter to draw the bills in question: For, it does not appear that, the contract was upon the account of Blane; so far from it, his name is not even mentioned in the agreement, hut the stipulation is for bills on London, generally, to be endorsed by Batten and Dalrytnple, without mentioning on whom they were to be drawn: A circumstance, which plainly shews, that Blane was not considered as the person on whose account the contract was made; otherwise, it is not conceivable, why his name was omitted.
This, however, is not all. There are other circumstances which have considerable weight in determining, that i! was a transaction between Hunter and the plain tiff, upon the credit of Hunter only. For, it appears that, when Batten ¿¡’ Dalrympte refused to endorse, the plaintiff had it in contemplation to stop the delivery of the corn, until the bill of lading was assigned to him; which certainly would not have happened, had he relied upon ¡ho credit of Blane. Besides, that charge is exploded by other circumstances; for, in his letter of the 38d of ,LIprfl, 1700, he intimates, that the bills of others, endorsed by Hunter. would be received: which shews, that, his ooufi *184 dence was in Hunter himself: And, therefore, after the bills were returned protested, he is found enquiring how he could secure himself, as Hunter’s affairs were deranged.
These circumstances plainly prove, that the credit was not given to Plane, but to Hunter: and that the plaintiff relied on other securities for indemnity, in case his confidence in Hunter should turn out to have been misplaced.
But the case of Hooe &c. v. Oxley &c. 1 Wash. 19, is relied upon by the counsel for the appellee, as establishing Blanc’s responsibility. That case carried the principle far enough, and we are not disposed to push it any further. It is sufficient, therefore, to remark, that the analogy between the two cases is not so great, as the counsel supposes; for, there, the correspondence held out an idea, that Ponsonby’s bills would be honored to any extent; whereas, nothing of that kind appears in the present case: Of course, the authority of that case is not so decisive, as the counsel for the appellee represents.
The general rule is, that to charge the principal, the agency must be proved to be universal, or the power must be explicitly given. For, if the power is limited to a particular object, it is a mere relation between merchant and factor; and the latter must act within the pale of his authority, or the principal is not bound. Hopkins v. Blane, 1 Call, 361. But here, the agency is not pretended to be universal, and the power was limited to a particular object, which not being attended to, the correspondent could create no responsibility in the principal.
A doctrine, contrary to this, would be ruinous to commerce. For, then, if a merchant, in one country, ordéred goods from another, he would be liable to the manufacturers and shop-keepers, wlio furnished thorn, although he had no communication with them, and there was no confidence existing, or intended to exist between them and him; his engagement being confined to his own correspondent personally, without the least thought of extending it further. *
Upon the whole, the transactions between the plaintiff and Hunter appear to have been of a private nature; and founded on the credit of the latter only. Of course, there *185 is no ground for charging Rhine; and, therefore, the decree is to be reversed, and the bill dismissed with costs.*

[* See Paterson et al. v. Gandasequi, 15 East, 62.]

[* The decree was as follows: This day, £ce. on consideration of the transcript of the record, <S¿c. no evidence appearing to prove that M. was factor or geueral agent for 15., or that the said U. had power or authority to draw bills of exchange on Í5. except to reimburse himself for his advances in making purchases for 15. under orders from him; aud 15. having m Ills orders, contained in his letters referred to in the bill of l\, limited the powers of U. and restricted them to the purchase of grain at a reasonable price, within a certain time, having regard to the prospect of gain on the sale thereof in a foreign market, and not having authorised the said I f. to 'purchase in the name or on the credit of 15.; 1 he said II, could only purchase in his own name, and on his own credit in executing the said orders, and could not pledge the credit of 15. for the amount of the purchases and shipments made by him, in pursuance, thereof; and B. not having authorised or approved of the conduct and proceeding of the said II. with regard to the purchases made by him, or the bills drawn for payment of them, under the orders aforesaid, was not bound in law or equity to accept the bills drawn upon him by the said II. for more than was due from him to said II. or the funds of said If. in his hands; and it appearing that the said IX. had not only transgressed bis orders, but was largely indebted to 15. at the time of the bills of cxehangem the bill mentioned to have been drawn by said IX. in favor of l\ were presented to him for acceptance, this Court is of opinion that II. was not bound in equity to accept or pay the said bills, and therefore, &c. (Order Book, No. 4, p. 179.)]